# EXHIBIT I

LEXSEE 133 F. SUPP.2D 272

In re: REZULIN PRODUCTS LIABILITY LITIGATION; This paper relates to 00 Civ. 6069, 00 Civ. 7627, 00 Civ. 7628, 00 Civ. 7629, 00 Civ. 7630, 00 Civ. 7631, 00 Civ. 7632, 00 Civ. 7634, 00 Civ. 7635, 00 Civ. 7636, 00 Civ. 7072, 00 Civ. 8501, 00 Civ. 9033, 00 Civ. 9039, 00 Civ. 9131, 01 Civ. 0049.

MDL No. 1348, Master File 00 Civ. 2843 (LAK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

133 F. Supp. 2d 272; 2001 U.S. Dist. LEXIS 2008; CCH Prod. Liab. Rep. P16,028

March 1, 2001, Decided
March 1, 2001, Filed

**DISPOSITION:** [**1] Motions to remand in Hill, No. 00 Civ. 7634, Hunter, No. 00 Civ. 7635, Southern, No. 00 Civ. 7636, Armstrong, No. 00 Civ. 7632, H. Johnson, No. 00 Civ. 7631, House, No. 00 Civ. 7628, Gray, No. 00 Civ. 8501, Gannon, No. 00 Civ. 6069, Love, No. 00 Civ. 7629, Burnworth, No. 01 Civ. 0049, Mahon, No. 00 Civ. 9039, Hernandez, No. 00 Civ. 9033, Frost, No. 00 Civ. 9131 and Williams, No. 00 Civ. 7627 denied. Motion to remand in Villarreal, No. 00 Civ. 7072 granted. Defendants' motions in Hill, No. 00 Civ. 7634, Hunter, No. 00 Civ. 7635, Southern, No. 00 Civ. 7636, House, No. 00 Civ. 7628 and H. Johnson, No. 00 Civ. 7631 to strike affidavit of Calvin Ramsey denied.

**COUNSEL:** For Plaintiffs: Charles A. Mathis, HERMAN, MATHIS, CASEY & KITCHENS.

For Plaintiffs: Arnold Levin, LEVIN FISHBEIN SEDRAN & BERMAN.

For Plaintiffs: Regina L. LaPolla, MILBERG WEISS BERSHAD HYNES & LERACH LLP.

For Plaintiffs: Edward Blackmon, Jr., BLACKMON & BLACKMON.

For Plaintiffs: David P. Matthews.

For Defendants: David Klingsberg, Alan E. Rothman, KAYE, SCHOLER, FIERMAN, HAYS & HANDLER, LLP.

For Defendants: John E. Goodman, BRADLEY ARANT ROSE & WHITE LLP.

For Defendants: Frank A. Wood, Jr., [**2] WATKINS & EAGER, PLLC.

For Defendants: Quentin F. Urquhart, Jr., IRWIN FRITCHIE URQUHART & MOORE LLC.

**JUDGES:** Lewis A. Kaplan, United States District Judge.

**OPINION BY:** Lewis A. Kaplan

**OPINION:**

[*279] **MEMORANDUM OPINION**

LEWIS A. KAPLAN, *District Judge.*

These sixteen actions are among the hundreds seeking recovery for personal injuries allegedly resulting from the use of the prescription diabetes medication, Rezulin, formerly manufactured by defendants Warner-Lambert Co. and its Parke-Davis division, that have been consolidated here for pretrial proceedings by the Judicial Panel on Multidistrict Litigation. Each of these sixteen originally was commenced in a state court and removed by defendants on the basis of diversity of citizenship. The matter now is before the Court on plaintiffs' motions to remand on the ground that subject

133 F. Supp. 2d 272, *279; 2001 U.S. Dist. LEXIS 2008, **2;
CCH Prod. Liab. Rep. P16,028

matter jurisdiction is lacking.

*I. Fraudulent Joinder*

Plaintiffs' chief claim is that these actions were removed improperly because there is at least one defendant in each -- usually a pharmacy or an employee of one of the defendant pharmaceutical companies -- that is a citizen of the same state as a plaintiff, thus destroying the complete diversity of [**3] citizenship essential to the exercise of removal jurisdiction. Defendants rejoin that the non-diverse defendants must be disregarded.

The question whether a non-diverse party has been joined improperly is one of federal law. n1 Moreover, although the joinder of parties lacking a genuine interest in the controversy frequently is referred to as fraudulent joinder, thus suggesting that the determinative issue is one of motive, motive in fact usually has nothing to do with it. The only issue is whether the plaintiff has a legitimate claim against the non-diverse or in-state defendant -- whether, in other words, the plaintiff has no real or direct interest in the controversy vis-a-vis the non-diverse or in-state defendant because it cannot state a legally sufficient and factually arguable claim for relief against it. n2

n1 *Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1998).* Accordingly, Second Circuit precedent is persuasive. *See In re Pan American Corp., 950 F.2d 839, 847 (2d Cir. 1991)* (transferee federal court should apply its interpretations of federal law, rather than those of the transferor circuit); *Menowitz v. Brown, 991 F.2d 36, 40 (2d Cir. 1993)* (applying *In re Pan American* to transfer made pursuant to *28 U.S.C. § 1407).*

[**4]

n2 Of course, the issue may arise in different frameworks. A single plaintiff may sue two defendants, one of which is a citizen of the same state as the plaintiff. A single defendant may be sued by two or more plaintiffs, at least one of which is a citizen of the same state as the defendant. Multiple plaintiffs may sue multiple defendants with at least one plaintiff and one defendant being citizens of different states. But the question presented always is the same in substance: whether there is a legally sufficient and factually arguable claim for relief as between the parties whose presence would destroy complete diversity of citizenship.

The standard for determining whether a plaintiff's claim against a defendant who is a citizen of the plaintiff's state is sufficiently substantial to defeat removal jurisdiction is governed by *Pampillonia v. RJR Nabisco, Inc.* n3 In order to warrant disregard of the citizenship of a non-diverse party, a removing defendant must "demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, [**5] or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse [*280] defendants in state court." n4 The burden on a removing defendant to meet this standard is a heavy one, and all reasonable doubts of fact and law are resolved in favor of the plaintiff. n5 Nevertheless, the burden is not impossible of satisfaction.

n3 *138 F.3d 459.*

n4 *Id. at 461. Accord, Saxe, Bacon & Bolan, P.C. v. Martindale-Hubbell, Inc., 521 F. Supp. 1046, 1047 (S.D.N.Y. 1981).* The statement in *Pampillonia* that a defendant must establish that there is "no possibility" that the plaintiff might prevail against a non-diverse defendant, *138 F.3d at 461,* as plaintiffs conceded at oral argument, Tr., Jan. 25, 2001, at 6-7, cannot be taken literally. Even if a plaintiff's claim against a non-diverse defendant were squarely precluded by a recent decision of a state's highest court or by a statute precisely applicable to the claim, there always would be a "possibility," however remote, that the court or legislature might change its mind so as to permit the plaintiff to prevail. In consequence, several circuits, in decisions cited with approval by the Second Circuit in *Pampillonia*, have indicated that the standard more accurately is described as requiring a showing that there is "no reasonable basis" for predicting liability on the claims alleged. *Pampillonia, 138 F.3d at 461 n.3* (citing *Badon v. RJR Nabisco, Inc., 224 F.3d 382, 393 (5th Cir. 2000); Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), cert.*

133 F. Supp. 2d 272, *280; 2001 U.S. Dist. LEXIS 2008, **5;
CCH Prod. Liab. Rep. P16,028

*denied, 498 U.S. 1085, 112 L. Ed. 2d 1046, 111 S. Ct. 959 (1991)).* That is the standard this Court applies. *Accord American Mutual Liability Ins. Co. v. Flintkote Co., 565 F. Supp. 843, 845 (S.D.N.Y. 1983)* (noting test for fraudulent joinder "has uniformly been at least whether there is any reasonable basis for predicting that state law might impose liability in the non-diverse defendant").

[**6]

n5 *See 138 F.3d at 461.*

The application of this standard to questions of state law also merits a further word. Federal courts sitting in diversity commonly apply state law as rules of decision under *Erie R.R. Co. v. Tompkins.* n6 Their role in such cases is familiar -- they make their best judgments as to how the state courts would resolve the issues before them and decide their diversity cases accordingly. n7 As the reasonable possibility standard implies, however, the task here is more limited. In a case in which the defendants contend that joinder is "fraudulent" because the claim against a non-diverse defendant is insufficiently substantial as a matter of law, the Court must consider the state law upon which the claim rests and then determine only whether there is a reasonable possibility that the relevant state's highest court would rule in favor of the plaintiff were the issue presented to it. If there is such a possibility, then the joinder was appropriate and the case must be remanded.

n6 *304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938).*

[**7]

n7 *See Travelers Insurance Co. v. 633 Third Assocs.,* 14 F.3d 114, 119 (2d Cir. 1994) ("Where the substantive law of the forum state is uncertain or ambiguous, the job of the federal courts is carefully to predict how the highest court of the forum state would resolve the uncertainty or ambiguity."); *Bailey Employment System, Inc. v. Hahn, 655 F.2d 473, 477 (2d Cir. 1981)* ("Where there is an absence of state authority on an issue presented to a federal court sitting in diversity . . .

the federal court must make an estimate of what the state's highest court would rule to be its law.").

*A. Sales Representatives*

In six cases filed in Mississippi and one filed in Alabama, defendants claim that plaintiffs improperly joined Warner-Lambert sales representatives. n8 All six Mississippi complaints allege that the sales representatives "falsely and fraudulently advertised, marketed, distributed and sold the defendants' Rezulin drug to pharmacies, plaintiffs, decedents, and the general public of the state of Mississippi, and in particular, to Plaintiffs and other [Mississippi] [**8] [*281] residents." n9 They allege failure to warn, fraudulent and negligent misrepresentation, and breach of warranty. The Alabama complaint makes substantially similar claims as well as one based on the Alabama extended manufacturer's liability doctrine (the "AEMLD"), which is a common law doctrine that has subsumed all claims involving injury caused by defective products. n10

n8 The Mississippi cases are *Johnson v. Parke-Davis,* No. 00 Civ. 7631 (referred to here as *H. Johnson* for purposes of distinguishing it from another *Johnson* case in this MDL); *Hill v. Parke-Davis,* No. 00 Civ. 7634; *House v. Parke-Davis,* No. 00 Civ. 7628; *Hunter v. Parke-Davis,* No. 00 Civ. 7635; *Southern v. Parke-Davis,* No. 00 Civ. 7636; and *Williams v. Parke-Davis,* No. 00 Civ. 7627. The Alabama case is *Frost v. Warner-Lambert Co.,* No. 00 Civ. 9131.

n9 *See House* Sec. Am. Cpt. P 5B. The substance of this allegation is contained in all six Mississippi complaints. The complaints name some or all of the following defendant sales representatives: Lee Miers III, Davis J. Lemoine, Alice E. Bonar, Liesl Daly Bold, Philip Thower, and Karen M. Ewan. The Alabama complaint alleges similar claims against sales representative Gene Flood. *See Frost* Cpt P 9C.

[**9]

133 F. Supp. 2d 272, *281; 2001 U.S. Dist. LEXIS 2008, **9;
CCH Prod. Liab. Rep. P16,028

n10 *See Johnson v. General Motors Corp., 82 F. Supp. 2d 1326, 1329 (S.D. Ala. 1997)* (failure to warn claims subsumed by AEMLD); *Veal v. Teleflex, Inc., 586 So. 2d 188, 190-91 (Ala. 1991)* (negligence and wantonness claims subsumed by AEMLD).

*1. Factual Basis for Claims*

The Second Circuit's standard for fraudulent joinder allows for removal despite the presence of non-diverse defendants if the claims against those defendants have no basis in fact. n11 This is so when "the allegations in the plaintiff's pleading . . . are shown to be so clearly false and fictitious that no factual basis exists for an honest belief on the part of plaintiff that there is liability -- in short that the joinder is without any reasonable basis in fact and is made without any purpose to prosecute the cause in good faith . . . ." n12

n11 *Pampillonia, 138 F.3d at 461.*
n12 *Metropolitan Prop. and Cas. Ins. v. J.C. Penney Cas. Ins. Co., 780 F. Supp. 885, 888 (S.D.N.Y. 1991)* (quoting *Quinn v. Post, 262 F. Supp. 598 (S.D.N.Y. 1967))*.

[**10]

Defendants challenge the factual allegations of the complaints with respect to the sales representatives. Affidavits of the defendant sales representatives filed in each of the Mississippi cases state that the sales representatives "made no representations, by way of promotion or advertising or otherwise, or any statements whatsoever, including but not limited to representations regarding Rezulin to plaintiff or to the general public." n13 The affidavit filed in the Alabama case states that the sales representative had no dealings with plaintiff or plaintiff's decedent and did not "make any statements to the general public or participate in any advertising or promotion to the general public concerning Rezulin." n14 Plaintiffs have not responded to the affidavits in any way. In consequence, the Court can conclude only that the joinder of these sales representatives lacked any reasonable basis in fact. n15 This is not, however, the only basis upon which the Court finds joinder of the sales representatives to have been improper.

n13 *E.g.,* Lemoine Aff. P 4. All of the Mississippi affidavits contain this assertion.
[**11]

n14 Flood Aff. P 4.
n15 *See Badon, 224 F.3d at 393* (where plaintiffs failed to respond to defendants' affidavits and failed to request time to discover evidence to contradict affidavits, no reasonable basis for predicting that plaintiffs might establish liability); *Trumps v. Harley of New York Associates, 1995 U.S. Dist. LEXIS 16595, No. 94 CV 7080 (CSH), 1995 WL 656983,* at *3 (S.D.N.Y. Nov. 8, 1995) (assertions in affidavits submitted by defendants in support of removal presumed true for purposes of fraudulent joinder determination, where plaintiff failed to offer evidence to controvert assertions).

*2. Legal Sufficiency of Claims*

The joinder of the sales representatives in the Mississippi and Alabama cases would have been inappropriate even if there were a reasonable factual basis for the claims against them. There simply is no reasonable basis for supposing that any of the claims against them would be found legally sufficient by Mississippi or Alabama courts.

[*282] *a. The Mississippi cases*

*i. Failure to warn*

The dispositive question is whether there is a reasonable [**12] possibility that the Mississippi Supreme Court would find that pharmaceutical sales representatives have a duty to warn of characteristics of prescription drugs they sell. While no Mississippi court has resolved this precise issue, it does not follow that a "possibility exists that plaintiff can establish any cause of action against [the] defendant[s]." n16

n16 *Pampillonia, 138 F.3d at 461 n. 3* (quoting *Allied Programs Corp. v. Puritan Ins. Co., 592 F. Supp. 1274, 1276 (S.D.N.Y. 1984))*.

133 F. Supp. 2d 272, *282; 2001 U.S. Dist. LEXIS 2008, **12;
CCH Prod. Liab. Rep. P16,028

Mississippi follows the learned intermediary rule. "Where prescription drugs are concerned, the manufacturer's duty to warn is limited to an obligation to advise the prescribing physician of any potential dangers that may result from the drug's use." n17 The Mississippi Supreme Court has explained its rationale for its adoption of this principle as follows:

"As a medical expert, the prescribing physician can take into account the propensities of the drug, as well as the susceptibilities [**13] of his patient . . . The choice he makes is an informed one, an individualized medical judgment bottomed on a knowledge of both patient and palliative. Pharmaceutical companies, then, who must warn ultimate purchasers of dangers inherent in patent drugs sold over the counter, in selling prescription drugs are required to warn only the prescribing physician, who acts as the 'learned intermediary' between manufacturer and consumer." n18

n17 *Wyeth Laboratories, Inc., v. Fortenberry, 530 So. 2d 688, 691 (Miss. 1988)* (quoting *Swayze V. McNeil Laboratories, Inc., 807 F.2d 464, 470 (5th Cir. 1987)).*

n18 *See 530 So. 2d at 691* (quoting *Reyes v. Wyeth Laboratories, 498 F.2d 1264 (5th Cir.), cert. denied, 419 U.S. 1096, 42 L. Ed. 2d 688, 95 S. Ct. 687 (1974)).*

Precisely the same considerations apply here. If pharmaceutical sales representatives handling prescription drugs have any duty to warn anyone of dangers of their products, the duty [**14] is to warn the physicians to whom they promote the product. In any case, they have no duty to warn patients. Accordingly, insofar as these complaints rest on a contention that the sales representatives failed to warn plaintiffs or the public generally, there is no reasonable chance that the Mississippi courts would find them sufficient.

Nor are these claims saved by plaintiffs' conclusory allegations that the defendant sales representatives failed adequately to warn "physicians." n19 In Mississippi, as elsewhere, the injury complained of must be a proximate consequence of the alleged breach of duty. n20 Yet plaintiffs do not allege that the defendant sales representatives failed to warn the particular physicians who prescribed the drug for them, let alone that this alleged failure was the proximate cause of their injuries. This is fatal to their claims. n21 And the affidavit of Dr. Calvin Ramsey, submitted in some of the Mississippi cases, which attests that Warner-Lambert sales representatives promoted Rezulin to Dr. Ramsey and that he in turn prescribed it for unspecified patients, does not alter this conclusion, as there is no claim that Dr. Ramsey prescribed the drug for any of [**15] these plaintiffs. n22

n19 *See Hill* Cpt. P 15C; *House* Second Am. Cpt P 31C; *Hunter* Cpt P 32C; *H. Johnson* Second Am. Cpt P 18C; *Southern* Cpt P 32C; *Williams* Cpt. P 38C.

n20 *Carpenter v. Nobile, 620 So. 2d 961, 964 (Miss. 1993).*

n21 *See Thomas v. Hoffman-La Roche, Inc., 731 F. Supp. 224 (N.D. Miss. 1989), aff'd, 949 F.2d 806 (5th Cir.), cert. denied, 504 U.S. 956, 119 L. Ed. 2d 226, 112 S. Ct. 2304 (1992)* ("A plaintiff in a prescription drug products liability case has the burden of proving that an adequate warning to the *prescribing* physician would have altered the physician's conduct.") (citing *Wyeth Laboratories, 530 So. 2d at 691)* (emphasis added).

n22 Defendants have moved to strike Dr. Ramsey's affidavit on this ground. But the fact that the affidavit does not remedy the defects in plaintiffs' position is not a ground for striking it.

[*283] *ii. Fraud and negligent misrepresentation* [**16]

Plaintiffs allege also that the defendant sales representatives fraudulently represented to plaintiffs "that the Rezulin drug was not defective or unreasonably dangerous to its users." n23 But these claims would be insufficient as a matter of law even if plaintiffs had contested the sales representatives' affidavits denying any

contact with them.

n23 *See House* Sec. Am. Cpt. P 5C. The allegations against the sales representatives in *House* are identical to those in *H. Johnson, Hill, Hunter, Southern* and *Williams.*

To state a cause of action for fraud under Mississippi law, plaintiffs must allege (1) false representation of a material fact; (2) the speaker's knowledge or belief in its falsity; (3) the hearer's belief in its truth; (4) the speaker's intent that it should be acted upon; (5) the hearer's right to rely on it; and (6) the hearer's actual detrimental reliance. n24 Moreover, averments of fraud must be stated with particularity under either federal or Mississippi law. n25 Thus, a fraud [**17] complaint will be sustained only if the circumstances of the alleged fraud -- including matters such as the time, place, content and speaker of the allegedly fraudulent misrepresentations -- are set forth. n26

n24 *See Allen v. Mac Tools Inc., 671 So. 2d 636, 642 (Miss. 1996).*
n25 FED. R. CIV. P. 9(b); MISS. R. CIV. P. 9(b).
n26 *See, e.g., Novak v. Kasaks, 216 F.3d 300, 306 (2d Cir.), cert. denied, 531 U.S. 1012, 148 L. Ed. 2d 486, 121 S. Ct. 567 (2000)* (citing *Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d. Cir. 1994)); MISS. R. CIV. P. 9(b), comment.*

Plaintiffs assert simply that "on or after March, 1997, in the State of Mississippi, and particularly in LeFlore County, Mississippi" the individually named sales representatives "represented to [plaintiffs] that the Rezulin drug was not defective or unreasonably dangerous to its users." n27 They have supported these general allegations with a laundry list of information tending [**18] to show the dangers of Rezulin and argue that "the defendants" fraudulently withheld each bit of this information from plaintiffs. n28 But this is well short of the mark. The complaints do not allege all of the essential elements of fraud, most obviously that the sales representatives knew that Rezulin was unsafe at the time they spoke but withheld the truth to mislead plaintiffs. n29 Nor have plaintiffs properly alleged the time and

place of particular representations. Instead, they have peppered their complaints with allegations of management-level corporate wrongdoing, which they ascribe to salespeople through the use of the catch-all attribution to "defendants." n30 [*284] Such general allegations do not meet the Rule 9(b) requirements. If sustained, they would undermine the rule's intent "to provide a defendant with fair notice of a plaintiff's claim, [and] to safeguard a defendant's reputation from improvident charges of wrongdoing." n31

n27 *See House* Sec. Am. Cpt. P 5C. As explained previously, the *House* complaint is substantially similar in all relevant respects to the complaints in *H. Johnson, Hill, Hunter, Southern* and *Williams.*
[**19]

n28 *See id.* PP 30-34, including PP 31A-X.
n29 *See San Leandro Emergency Medical Group Profit Sharing Plan v. Philip Morris Companies, Inc., 75 F.3d 801, 812-13 (2d Cir. 1996)* (complaint insufficient where it created mere inference of fraud based on general allegations, and did not allege circumstances to show that defendants' knew their representations were false when made).
n30 For instance, plaintiffs allege that "the defendants fraudulently failed to disclose to plaintiff, health care providers and the general public that data from their own clinical trials showed that 2.2 % of Rezulin users showed liver damage." *See House* Am. Cpt. P 31X. This allegation suffers from the same defects in specificity as almost all the other allegations of fraud. It fails to allege, for instance, that the sales representatives in particular knew of the results of Warner-Lambert's clinical trials or, if they did, that the sales representatives made specific statements to the plaintiffs at a particular time and place that falsely misrepresented the results of those clinical trials or fraudulently withheld information they knew to be material.
n31 *Shields, 25 F.3d at 1128* (quoting *O'Brien v. National Property Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991)).*

[**20]

133 F. Supp. 2d 272, *284; 2001 U.S. Dist. LEXIS 2008, **20;
CCH Prod. Liab. Rep. P16,028

Plaintiffs argue that these deficiencies in their pleadings might be cured by amendment (although they have not sought leave to do so) and that this possibility requires remand. Stated differently, they argue that the mere possibility that they *might* successfully amend their complaints to state a cause of action against non-diverse defendants defeats the "no possibility" standard for fraudulent joinder. n32

n32 Plaintiffs advanced this theory at oral argument with reference to the *Gannon* case, but the theory would apply by implication to all instances in which the Court makes a fraudulent joinder determination based on deficiencies in pleadings that conceivably might be amended.

Carried to its logical conclusion, the argument implies that a plaintiff could join any defendant without setting forth any basis in fact or law for liability -- in short, that a plaintiff "could defeat diversity jurisdiction by joining his grandmother as a defendant, [as] surely some set of facts might make her liable. [**21] " n33 The Court declines to adopt this theory. While federal and many state courts have adopted liberal rules of notice pleading, pleadings are not inconsequential documents. Indeed, the Second Circuit has indicated that the question whether there is a reasonable possibility of recovery for purposes of determining the propriety of joinder is to be determined "based on the pleadings." n34 Federal courts across the nation have relied upon that standard to deny remand based on inadequate pleadings and to disregard allegations not contained in the original complaint. n35 Indeed, it would be difficult [*285] to justify any different approach in resolving claims of improper joinder in the removal context, as another approach could close the doors to federal courts solely on the basis of plaintiffs' wishful speculation. Although a defendant "bears a heavy burden to establish fraudulent joinder, it need not negate any possible theory that [plaintiffs] might allege in the future: Only [the] present allegations count." n36 As the existing complaints fail to state a claim upon which relief may be granted against the sales representatives for fraudulent misrepresentation, there is no reasonable possibility [**22] of recovery on those claims.

n33 *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 74 (7th Cir. 1992).

n34 *Pampillonia*, 138 F.3d at 461.

n35 *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38, 83 L. Ed. 334, 59 S. Ct. 347 (1939) (court should determine validity of removal based on pleadings in original complaint); *Poulos*, 959 F.2d at 74 (no fraudulent joinder where complaint failed to allege facts required to find liability under applicable state law, despite fact that plaintiff could have cured deficiencies in complaint by amendment); *Kruso v. Int'l Telephone & Telegraph Corp.*, 872 F.2d 1416, 1426 (9th Cir. 1989), cert. denied, 496 U.S. 937 (1990) (declining to consider potential allegations in proposed complaint because fraudulent joinder is determined on basis of pleadings at time removal was filed); *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987) (where plaintiffs alleged facts insufficient to state claim against non-diverse defendants, fact that plaintiffs had moved to amend their complaint to state a claim irrelevant to fraudulent joinder determination); *Smith v. City of Picayune*, 795 F.2d 482, 485 (5th Cir. 1986) ("Generally, the right of removal is determined by the pleadings as they stand when the petition for removal is filed."); *Vasura v. Acands*, 84 F. Supp. 2d 531, 539 (S.D.N.Y. 2000) (fraudulent joinder analysis made with reference to original complaint); *Inman v. Daimler-Chrysler Corp.*, 2000 U.S. Dist. LEXIS 3135, No. 00 CV 0134 (SBC), 2000 WL 283016, at *6 (N.D. Ill. March 9, 2000) (fact that Illinois law allows pleadings to be amended at any time before judgment irrelevant to determination of fraudulent joinder; plaintiffs "had no chance of recovering" based on allegations in complaint, and did not attempt to amend or give indication as to how deficiencies could be cured); *Sonnenblick-Goldman Co. v. ITT Corp.*, 912 F. Supp. 85, 90 (S.D.N.Y. 1996) (joinder improper where plaintiff failed to meet Rule 9(b) pleading requirements because "before the Court can even evaluate the possibility of Plaintiff making out a claim of fraud there must be a Complaint that has been properly pled"); *Waters v. State Farm Mutual Automobile Insurance Co.*, 158 F.R.D. 107, 109 (S.D. Tex. 1994) (failure to satisfy Rule 9(b) pleading requirements and to specify a

133 F. Supp. 2d 272, *285; 2001 U.S. Dist. LEXIS 2008, **22;
CCH Prod. Liab. Rep. P16,028

factual basis for recovery against non-diverse defendant "constitutes failure to state a claim and fraudulent joinder of that party"; speculation that evidence exists to support claim irrelevant to fraudulent joinder determination) (citing *Doe v. Cloverleaf Mall, 829 F. Supp. 866, 870 (S.D. Miss. 1993)); Mays v. United Insurance Co. of America, 853 F. Supp. 1386, 1388-89 (M.D. Ala. 1994)* (basing fraudulent joinder determination in part on whether complaint met Rule 9(b) requirements). *But see Ratnesar v. Royal & Sunalliance Financial Services, 2000 U.S. Dist. LEXIS 8402, *4, No. 00 CV 1171 (CRB), 2000 WL 769223, at *2 (N.D. Cal. June 9, 2000)* ("While plaintiff's complaint does not allege that [defendant] made any representations to plaintiff, plaintiff represents in his motion that he can [so] allege. . . . Thus, the Court cannot conclude as a matter of law that plaintiff cannot possibly recover against [defendant].").

[**23]

n36 *Poulos, 959 F.2d at 74.*

Plaintiffs allege also negligent misrepresentation by "defendants" in general. As allegations of intent to defraud or deliberate wrongdoing are not essential to state such a claim, n37 Rule 9(b) is not necessarily applicable to such claims. On the other hand, where a plaintiff states a claim for negligent misrepresentation but alleges the additional element of fraudulent intent, Rule 9(b) comes into play. n38

n37 The elements of negligent misrepresentation are (1) a misrepresentation or omission of a material fact; (2) failure to exercise reasonable care on the part of the defendant; (3) reasonable reliance on the misrepresentation or omission; and (4) damages as a direct result of such reasonable reliance. *Levens v. Campbell, 733 So. 2d 753, 760-61 (Miss. 1999).*
n38 Courts often have applied this theory in the context of claims pled under Sections 11 and 12(a)(2) of the Securities Act of 1933, *15 U.S.C. §§ 77k(1), 77l(a)(2). See, e.g., In re Ultrafem Inc. Securities Litigation, 91 F. Supp. 2d 678, 690*

*(S.D.N.Y. 2000)* (Rule 9(b) applicable where complaint made "classic fraud allegations . . . of misrepresentations and omissions made with intent to defraud"); *Schoenhaut v. American Sensors, Inc., 986 F. Supp. 785, 795 (S.D.N.Y. 1997)* ("it seems only fair that if plaintiffs have pled fraud, they must comply with the requirements of 9(b)") (citing *Melder v. Morris, 27 F.3d 1097, 1100 n. 6 (5th Cir. 1994); Shapiro v. UJB Fin. Corp., 964 F.2d 272, 288 (3d. Cir.), cert. denied, 506 U.S. 934, 121 L. Ed. 2d 278, 113 S. Ct. 365 (1992); Sears v. Likens, 912 F.2d 889, 893 (7th Cir. 1990)).* The reasoning of these and similar cases is persuasive here.

[**24]

Here, plaintiffs allege that defendants "knew, or should have known, that dangerous risks were associated with the use of [Rezulin]" but that despite this knowledge they "consciously ignored and understated the health risks associated with Rezulin" and participated in producing advertisements and promotions that "contained misrepresentations and omissions of fact that were intended to create in the minds of the consuming public the false sense and feeling that [Rezulin] was safe . . . ." n39 Thus, although plaintiffs have characterized their claims as being for negligence, in substance they charge fraud. Accordingly, their negligent misrepresentation claims are deficient for failure to comply with Rule 9(b).

n39 *Hill* Cpt. PP 22-24. All six Mississippi complaints contain identical allegations.

The negligent misrepresentation claims are insufficient for another reason. In order to state a claim for negligent misrepresentation, plaintiffs must allege that a misrepresentation was made to them, as opposed [**25] to others, n40 and that they relied on it. Plaintiffs here fail to allege that defendants made any representations to them. Rather, they allege that defendants misrepresented the risks of Rezulin "to the public," and conclude that "each of the defendants were, therefore, guilty of misrepresentation or omissions of [*286] material facts to the plaintiff . . ." n41 These conclusory statements are insufficient to meet the required nexus between the plaintiffs and the defendants' alleged misrepresentations.

133 F. Supp. 2d 272, *286; 2001 U.S. Dist. LEXIS 2008, **25;
CCH Prod. Liab. Rep. P16,028

n42

n40 *Arnona v. Smith, 749 So. 2d 63, 67 (Miss. 1999).*
n41 *Hill* Cpt. PP 22-28.
n42 *See Arnona, 749 So. 2d at 67* (upholding dismissal of complaint alleging misrepresentation made to plaintiffs' purchasers, rather than plaintiffs).

*iii. Breach of warranty*

Under Mississippi's Uniform Commercial Code ("UCC"), an implied warranty of merchantability arises "if the seller is a merchant with respect to goods of that kind." n43 Plaintiffs allege that the defendant [**26] sales representatives breached an implied warranty of merchantability when they marketed, sold and distributed Rezulin. The defendant sales representatives, however, were not "sellers" of the product for purposes of warranty; the "seller" who impliedly warranted the merchantability of Rezulin was the pharmaceutical manufacturer. n44 In any case, there is no contention that the individual sales representatives "sold" Rezulin to plaintiffs, either directly or indirectly. Hence, there is no reasonable basis for supposing that Mississippi would impose liability on the sales representatives for breach of warranty. n45

n43 *MISS. CODE ANN. § 75-2-314.* The Mississippi Products Liability Act ("MPLA") created an additional cause of action in tort for a breach of express warranty, *see MISS. CODE ANN. § 11-1-63,* but it did not preclude breach of implied warranty claims under the Mississippi UCC in products liability actions. *See Childs v. General Motors Corp., 73 F. Supp. 2d 669, 672 (N.D. Miss. 1999).*
n44 *See McCurtis v. Dolgencorp, Inc., 968 F. Supp. 1158, 1161 (S.D. Miss. 1997)* (finding no cause of action for breach of warranty against sales representatives who "are not in the business of selling products but rather are employed by companies that are in the business of selling products. . .") (internal quotations omitted). *See also Lobato v. Pay Less Drug Stores, Inc., 261*

*F.2d 406, 408 (10th Cir. 1958)* (drug store employee who transacted with and delivered defective bicycle to plaintiff was not "seller"; corporation was "seller" and employee was thus not personally liable).

[**27]

n45 In any products liability action, a plaintiff must establish a connection, however indirect, between the defendant and the defective product that caused plaintiff's injuries. *See Johnson v. Parke-Davis, 114 F. Supp. 2d 522, 525 (S.D. Miss. 2000)* (no cause of action for breach of implied warranty where plaintiffs did not allege that they or their physicians purchased or received Rezulin from any of named sales representatives); *Albritton v. Coleman Co., 813 F. Supp. 450, 454 (S.D. Miss. 1992)* ("essential element of plaintiffs' case is the identification of the named defendant as the manufacturer or supplier of the defective product in question"). Without alleging that the sales representatives supplied the Rezulin that plaintiffs eventually bought, there is no allegation that the sales representatives supplied "the defective product in question."

As there is no reasonable possibility that plaintiffs have alleged legally sufficient claims for relief against the Warner-Lambert sales representatives for failure to warn, fraudulent or negligent misrepresentation, [**28] or breach of warranty, the sales representatives were joined improperly in these six actions.

*b. The Alabama case*

The plaintiff in the Alabama case asserts on behalf of her decedent claims against a Parke-Davis sales representative for negligence, wantonness, failure to warn, strict products liability under the AEMLD, and "fraud, misrepresentation, and suppression." n46

n46 *See Frost* Cpt Counts I, II, IV-VI. Defendants believe that the complaint alleges also breach of warranty claims against the sales representative, but that claim is specifically directed at the "defendant Manufacturers," *see Frost* Cpt Count III P 5.

133 F. Supp. 2d 272, *286; 2001 U.S. Dist. LEXIS 2008, **28;
CCH Prod. Liab. Rep. P16,028

To begin with, the Alabama complaint suffers from the same defect as the Mississippi cases joining sales representatives: There is nothing in it indicating that the defendant sales representative sold Rezulin to plaintiff's decedent or to [*287] plaintiff's decedent's physician, thereby causing the alleged injuries. In order to recover under the AEMLD, a plaintiff must show "that he suffered [**29] injury caused by one who sold a defective product . . . ." n47 Similarly, to establish a claim of fraud or fraudulent suppression, a plaintiff must show that he or she reasonably relied on the alleged misrepresentation and suffered damage "as a proximate consequence." n48 The absence of any alleged connection between the sales representative and plaintiff's decedent therefore is fatal to all of the claims against the sales representative. n49

n47 *Carter v. Cantrell Machine Co., Inc., 662 So. 2d 891, 892 (Ala. 1995)* (internal citations omitted).
n48 *Ex Parte Michelin North America, Inc., 2001 Ala. LEXIS 22, No. 1990615 (AHM), 2001 WL 29198,* at *3 (Ala. Jan. 12, 2001) (fraud); *Ex Parte Dial Kennels of Alabama, Inc., 771 So. 2d 419, 421 (Ala. 1999)* (fraudulent suppression).
n49 Defendants argue also that plaintiff's fraud claim does not survive the death of her decedent under the Alabama survival statute, *ALA. CODE § 6-5-462.* The argument is somewhat puzzling, however. Under Alabama law, personal claims other than contract claims which were not filed prior to the decedent's death do not survive in favor of the decedent's personal representative. *See id. See also Brooks v. Hill, 717 So. 2d 759, 763 (Ala. 1998)* ("unfiled claim sounding in tort will not survive the death of the person with the claim"). Hence, one would expect defendants to make the same argument as to all of the tort claims. But there is no need to pause on this anomaly. This action was filed after the death of the plaintiff's decedent. In consequence, the tort and fraud claims may be maintained, if at all, only under Alabama's wrongful death statute. *ALA. CODE § 6-5-410. See Mattison v. Kirk, 497 So. 2d 120, 124-25 (Ala. 1986), overruled on other grounds, Carbon Hill Mfg, Inc. v. Moore, 602 So.*

*2d 354 (Ala. 1992)* (only remedy for personal injuries causing death is under wrongful death statute). And contrary to defendants' contentions, it is clear that this action is one for wrongful death.

For the proposition that the Alabama case is a survival rather than a wrongful death action, defendants rely on the first paragraph of the complaint, which states that "Plaintiff refers to the estate of William M. Frost and/or William M. Frost, deceased." However, many Alabama cases have allowed for wrongful death actions filed in the name of the administrator of the decedent's estate, and the Alabama Supreme Court has looked to the substance of the claim, rather than the wording of the caption, to determine whether it is a survival or wrongful death action. *See, e.g., Mattison, 497 So. 2d at 120* (wrongful death action filed by "Dorothy Mattison and Gary Mattison, as co-administrators of the Estate of Woodrow W. Mattison, deceased"); *Miller v. Dobbs Mobile Bay, Inc., 661 So. 2d 203 (Ala. 1995)* (insurance fraud action filed by "Joyce Miller, individually and as administratrix of the Estate of Mearl M. Miller, deceased" construed as survival action because insurance fraud cannot result in wrongful death). Here, the Alabama complaint alleges that the alleged fraud caused the death of plaintiff's decedent. *See Cantley v. Lorillard Tobacco Co, Inc., 681 So. 2d 1057 (Ala. 1996)* (stating fraud claims in wrongful death action). This Court therefore regards the Alabama complaint as asserting a wrongful death claim. Accordingly, defendants' attack on the fraud claim as having been extinguished by the death of plaintiff's decedent is without merit.

[**30]

There is another problem with the Alabama complaint against the sales representative. The AEMLD is founded on "broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." n50 Accordingly, the AEMLD imposes liability only on manufacturers, sellers and suppliers. n51

Case 3:07-cv-03492-CRB    Document 1-7    Filed 07/05/2007    Page 12 of 23

Page 11

133 F. Supp. 2d 272, *287; 2001 U.S. Dist. LEXIS 2008, **30;
CCH Prod. Liab. Rep. P16,028

n50 *Atkins v. American Motors Corp., 335 So. 2d 134, 139 (Ala. 1976).*

n51 *See Turner v. Azalea Box Co., 508 So. 2d 253, 254 (Ala. 1987)* (AEMLD applies only to manufacturers and sellers); *Atkins, 335 So. 2d at 139* (rejecting theory that retailer without knowledge of product's danger may be liable simply for "the mere selling of a defective product"); *King v. S.R. Smith, Inc., 578 So. 2d 1285, 1287 (Ala. 1991)* (liability for failure to warn under AEMLD attaches only if defendant "knows or should know" of the product's danger).

[**31]

The sales representative joined in the Alabama case neither manufactured, sold nor supplied Rezulin. n52 Rather, he was an agent of the manufacturer and [*288] seller. As a corporate employee, he was not "the one best able" to prevent sales of defective drugs. In light of the Alabama Supreme Court's clear explanation of the AEMLD's scope and purpose, there is no reasonable basis for supposing that it would impose liability on the sales representative in this case.

n52 *See* Flood Aff. PP 6, 7. Plaintiffs have not challenged the assertions in the affidavit.

B. Pharmacies

In seven cases filed in Mississippi, two in Alabama, and one each in Texas, West Virginia, and Louisiana, defendants argue that plaintiffs improperly joined pharmacies. n53

n53 The seven Mississippi cases are *Hill v. Parke-Davis*, No. 00 Civ 7634; *Hunter v. Parke-Davis*, No. 00 Civ 7635; *Love v. Parke-Davis*, No. 00 Civ 7629; *Southern v. Parke-Davis*, No. 00 Civ. 7636; *Teague v. Parke Davis*, No. 00 Civ. 7630; *Armstrong v. Warner-Lambert Co.*, No. 00 Civ. 7632; and *Williams v. Parke-Davis*, No. 00 Civ. 7627. The Alabama cases are *Gray v. Warner-Lambert Co.*, No. 00 Civ. 8501, and *Gannon v. Warner-Lambert Co.*, No. 00 Civ 6069. The Texas case is *Hernandez v. Parke-Davis*, No. 00 Civ. 9033. The West Virginia case is *Mahon v. Parke-Davis & Co., Inc.*, [sic] No. 00 Civ. 9039. The Louisiana case is *Burnworth v. Nielson's Pharmacy, L.L.C.*, No. 01 Civ. 0049. The Court does not address the *Teague* case for lack of jurisdiction, *see infra* part VI.

[**32]

1. Mississippi cases

While the seven actions contain slightly different allegations, they all fail to state any legally sufficient claim for relief against the pharmacies and thus present no reasonable possibility of recovery against them. As noted above, Mississippi adheres to the learned intermediary doctrine, which holds that prescription drug manufacturers have a duty to warn only physicians of the dangers of their products. Nevertheless, plaintiffs argue that there is a possibility that they will prevail because the Mississippi Supreme Court has not yet decided whether pharmacies selling prescription drugs owe a duty to warn patients about the drugs they dispense and whether they warrant the merchantability of those drugs to their customers. Accordingly, they assert, these cases must be remanded to the Mississippi courts.

Plaintiffs would be right if the Court were bound to remand if there were *any* possibility that the Mississippi courts would rule in their favor. As noted, however, the "no possibility" standard is a misnomer. It is expressed more accurately as one of no reasonable possibility.

The Mississippi Supreme Court has been quite clear in the rationale for [**33] its adoption of the learned intermediary doctrine. Its central point is that physicians determine the proper care of the patient. Imposing a duty to warn patients would threaten to undermine reliance on the physician's informed judgment regarding the appropriateness of a particular drug for a particular patient by confronting the patient with warnings from risk averse manufacturers, which may be difficult for lay persons to understand, which often will have no relevance to the particular patient, and which in any case cannot take account of all of the patient-specific information in the hands of the prescribing physician. In

133 F. Supp. 2d 272, *288; 2001 U.S. Dist. LEXIS 2008, **33;
CCH Prod. Liab. Rep. P16,028

consequence, the manufacturer has a duty to warn the physician and the physician alone.

The rationale of Mississippi's learned intermediary doctrine applies four-square to the question whether pharmacies have a duty to warn of the intrinsic dangers of prescription drugs. n54 Such warnings would create substantially the same risks as manufacturer warnings to patients. A risk averse pharmacist would have every incentive to dispense cautions that may be uninformed, inapplicable to or misunderstood by the patient. Such cautions would be at least as likely to undermine [**34] the physician's judgment as manufacturer [*289] warnings. Almost every state confronted with the question has declined to impose on pharmacists a duty to warn of intrinsic dangers of prescription drugs for precisely this reason. n55 Moreover, these states have not limited their holdings to failure to warn claims, but shielded pharmacists from liability on theories of strict liability and breach of warranty as well. n56

n54 This sentence and discussion does not extend to extrinsic dangers such as the possibility of interactions among drugs which the pharmacy knows the patient is taking at the same time, particularly where those drugs have been prescribed by different physicians.

n55 See, e.g., Jones v. Irvin, 602 F. Supp. 399, 402 (S.D. Ill. 1985) (applying state law finding no liability for pharmacists because "placing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders to escape liability"); Morgan v. Wal-Mart Stores, Inc., 30 S.W.3d 455, 466 (Tex. Ct. App. 2000) (petition for review filed, Nov. 3, 2000) (pharmacist who accurately fills prescription not liable for harm caused by dangers inherent in drug); Walker v. Jack Eckerd Corp., 209 Ga. App. 517, 521, 434 S.E.2d 63, 67 (1993), cert. denied, Oct. 29, 1993 ("need for preserving, without interference of third parties, trusted physician-patient relationship" counsels rule that pharmacist has no duty to warn); Frye v. Medicare-Glaser Corp., 153 Ill. 2d 26, 34, 605 N.E.2d 557, 560, 178 Ill. Dec. 763 (1992) ("consumers should principally look to their prescribing physician to convey the appropriate warnings regarding drugs, and it is the prescribing

physician's duty to convey these warnings to patients"); Coyle v. Richardson-Merrell, Inc., 526 Pa. 208, 214, 584 A.2d 1383, 1386 (1991) ("If the manufacturer has no duty to directly warn patients of the risks of drugs, it would indeed be incongruous to hold pharmacists to such a duty in the dispensing of drugs."); Nichols v. Central Merchandise, Inc., 16 Kan. App. 2d 65, 67, 817 P.2d 1131, 1133 (1991) (learned intermediary doctrine shields pharmacists from liability); McKee v. American Home Products Corp., 113 Wn.2d 701, 711, 782 P.2d 1045, 1050-51 (1989) (same); Stebbins v. Concord Wrigley Drugs, Inc., 164 Mich. App. 204, 218, 416 N.W.2d 381, 387-88 (1987) ("pharmacist has no duty to warn the patient of possible side effects of a prescribed medication where the medication is proper on its face and neither the physician nor the manufacturer has required that any warning be given to the patient by the pharmacist"); Ingram v. Hook's Drugs, Inc., 476 N.E.2d 881, 886 (Ind. Ct. App. 1985) (learned intermediary doctrine shields pharmacists from liability); Pysz v. Henry's Drug Store, 457 So. 2d 561, 562 (Fla. Dist. Ct. App. 1984) (no liability for pharmacists who properly fill a lawful prescription because "it is the physician who has the duty to know the drug that he is prescribing and to properly monitor the patient"). See also David J. Marchitelli, Liability of Pharmacist Who Accurately Fills Prescription for Harm Resulting to User, 44 A.L.R.5th 393 (1996) (concluding based on multistate survey that "courts have been reluctant to hold pharmacists liable for injuries caused by drugs accurately dispensed according to the terms of valid prescriptions").

[**35]

n56 E.g., Robinson v. Williamson, 245 Ga. App. 17, 19, 537 S.E.2d 159, 161 (2000) (claims against a pharmacist for breach of warranty require a showing of negligence amounting to professional malpractice, such as failing to properly fill prescription); In re New York County Diet Drug Litigation, 262 A.D.2d 132, 133, 691 N.Y.S.2d 501, 502 (1st Dept. 1999) (where no allegation that pharmacist failed to fill prescriptions precisely as directed, no basis to hold pharmacists liable under theories of

133 F. Supp. 2d 272, *289; 2001 U.S. Dist. LEXIS 2008, **35;
CCH Prod. Liab. Rep. P16,028

negligence, breach of warranty or strict liability); *Murphy v. E.R. Squibb, Inc., 40 Cal. 3d 672, 679, 710 P.2d 247, 252, 221 Cal. Rptr. 447 (1985)* (pharmacists sell prescription drugs only on order of doctors and therefore are immune from strict liability that would attach to ordinary sellers). *See also* Marchitelli, *44 A.L.R.5th at 393* ("In cases [where] plaintiffs have asserted claims based on negligence, strict products liability, breach of warranty, statutory provisions regulating the pharmacy profession, and pharmacy trade association standards, . . . successes [have been] limited largely to cases in which the circumstances indicate that the defendant pharmacists knew or should have known that the particular plaintiff was at risk."). For a discussion of the legal deficiencies specific to breach of warranty claims against pharmacists, *see infra* notes 73 - 75 and accompanying text.

[**36]

Plaintiffs argue that there are cases to the contrary in some jurisdictions and that Mississippi might follow them if the issue were presented. But those cases are inapplicable here. One involved a failure to warn of possible drug interactions, not of an intrinsic property of the prescribed drug, and thus raised an entirely different issue. n57 Another involved a failure to advise the patient of the maximum safe dosage for the medication where the prescription was silent on the subject, n58 and two more dealt with the unquestioning provision [*290] of addictive drugs over lengthy periods. n59 In light of the existing Mississippi learned intermediary doctrine and the overwhelming majority of other states applying it to pharmacies, there is no reasonable possibility that Mississippi would recognize a cause of action against pharmacists in the circumstance of these cases. Yet even if the Court were to find it reasonably possible that Mississippi here would decline to apply the learned intermediary rule to pharmacies, plaintiffs' claims would fail on other grounds.

n57 *Dooley v. Everett, 805 S.W.2d 380 (Tenn. Ct. App. 1990).*

[**37]

n58 *Riff v. Morgan Pharmacy, 353 Pa. Super. 21, 508 A.2d 1247 (1986), appeal denied, 514 Pa. 648, 524 A.2d 494 (1987).*
n59 *Lasley v. Shrake's Country Club Pharmacy, Inc., 179 Ariz. 583, 880 P.2d 1129 (1994); Horner v. Spalitto, 1 S.W.3d 519 (Mo. Ct. App. 1999), application for transfer to Supreme Court denied,* Aug. 31, 1999.

First, plaintiffs in all seven actions fail to state a claim for failure to warn. A failure to warn claim necessarily presupposes the defendant's knowledge of the dangers of which no warning was given. n60 Plaintiffs, however, allege that the defendant manufacturers and sales representatives "sought to minimize the growing awareness of the drug's harmful effects, by representing to the plaintiff, general public, physicians, *and others authorized to dispense said drug,* that Rezulin was safe . . ." n61 and that the defendant manufacturers and sales representatives "falsely and fraudulently represented to . . . pharmacists . . . that despite reports from various sources that the Rezulin [**38] drug was unreasonably dangerous to its users, the drug was in fact safe . . . ." n62 Thus, the theory underlying the complaints is that the manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians, distributors, and pharmacists -- indeed, from everyone. Plaintiffs' allegations that pharmacists knew and failed to warn of the dangers therefore are purely tendentious. n63

n60 *See MISS. CODE ANN. § 11-1-63(f)* ("In any action alleging that a product is defective because of its design . . . the . . . product seller shall not be liable if the claimant does not prove . . . that at the time the product left the control of the . . . seller . . . [the seller] knew, or in light of reasonably available knowledge or in the exercise of reasonable care should have known, about the danger that caused the damage for which recovery is sought . . .").
n61 *E.g., Hill* Cpt P 5C (emphasis added).
n62 *Id.*
n63 *See Louis v. Wyeth-Ayerst Pharm. Inc.,* No. 5:00CV120LN, at 4-5 (S.D. Miss. Sept. 25, 2000) (because "knowledge or reason to know is a necessary requisite for a claim of failure to warn," and because "the complaint, the major theme of

133 F. Supp. 2d 272, *290; 2001 U.S. Dist. LEXIS 2008, **38;
CCH Prod. Liab. Rep. P16,028

which is the manufacturers' intentional concealment of the true risks of the drug(s) . . . belies any suggestion of knowledge, or reason to know by these resident defendants . . . it is plain that the complaint on the whole . . . [does not allege] any factual basis for the conclusion that any of the pharmacy defendants had any knowledge or any reason to know of any of the danger associated with the products . . .").

[**39]

Second, five of the seven Mississippi complaints allege claims arising under the Mississippi Pharmacy Practice Act ("MPPA"). n64 They maintain that defendant pharmacies negligently dispensed Rezulin to plaintiffs without adequately reviewing the plaintiffs' "records," n65 consulting with plaintiffs based on that review, and warning patients of, among other things, adverse effects and interactions resulting from the use of Rezulin. n66 Yet plaintiffs allege also that plaintiffs' injuries resulted "from the defective product"-- not clinical abuse, drug interactions, incorrect dosage, or any of the other problems defendants allegedly neglected to guard against. Hence, even if the pharmacy defendants' failure to review records of and [*291] consult with plaintiffs did breach a duty, it was not this particular breach that proximately caused the injuries suffered by plaintiffs. Accordingly, plaintiffs in these five cases have failed to state a cause of action for negligence.

n64 *MISS. CODE ANN. § 73-21-69 et seq.* The five cases are *Hill, Hunter, Love, Southern,* and *Teague.* Again, the Court does not here consider *Teague* for lack of jurisdiction.

[**40]

n65 By "records," it is unclear whether plaintiffs mean medical records (although it is doubtful a pharmacist would have access to medical records) or pharmaceutical records.

n66 *See, e.g., Hill* Am. Cpt. PP 43-45. The allegations in the other four complaints are identical.

*Armstrong* suffers from an added defect. Plaintiffs there make no allegations specifically against the defendant pharmacies, but instead lump them together with the manufacturers and attribute the acts alleged -- failure to warn, n67 breach of warranty, and fraud -- to the "defendants" generally. But they do not connect themselves to any alleged acts of the pharmacy defendants. Under any of the theories proffered in *Armstrong,* the complaint must allege that the defendant pharmacies sold or supplied Rezulin *to plaintiffs.* Without drawing that connection, plaintiffs have no way of showing that the pharmacy defendants' acts proximately caused the alleged injuries. n68 Accordingly, the *Armstong* plaintiffs improperly joined the pharmacies as defendants.

n67 Plaintiffs allege also failure to use ordinary care in design and manufacture, but these claims do not apply to the pharmacy defendants.

[**41]

n68 *See MISS. CODE ANN. § 11-1-63* (holding manufacturer or seller of product liable "in any action for damages *caused* by a product") (emphasis added). While the MPLA does not apply to actions for implied warranty, the Mississippi UCC attaches an implied warranty of merchantability and fitness to goods sold by one who is a merchant with respect to goods of that kind. *See MISS. CODE ANN. §§ 75-2-314,* 75-2-315. Without showing that the pharmacist defendants actually sold Rezulin to plaintiffs, there is no cause of action for breach of implied warranty.

Finally, in *Williams,* plaintiffs allege that the pharmacy defendant breached both express and implied warranties. The express warranty provisions of the Mississippi UCC provide that such a warranty arises by "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." n69 The "basis of the bargain" element requires a buyer to show that he or she relied upon the seller's representations when deciding whether to purchase the goods. n70 Reliance may [**42] be presumed when a seller makes affirmations about the product, but only when those affirmations are made "during the bargain." The presumption arises, in other

133 F. Supp. 2d 272, *291; 2001 U.S. Dist. LEXIS 2008, **42;
CCH Prod. Liab. Rep. P16,028

words, only in instances in which the seller's words were "part of a negotiation" and thus have formed, at least in part, the reason for the buyer's acceptance of the goods. n71

n69 See MISS. CODE ANN. § 75-2-313(1)(a).

n70 See Fitzner Pontiac-Buick-Cadillac, Inc. v. Smith, 523 So. 2d 324, 327 (Miss. 1988) (where representation made after sale, and where plaintiff admitted that at time of purchase he did not consider goods to be under warranty, no breach because warranty "was not part of the basis of the bargain," within meaning of statute).

n71 See MISS. CODE ANN. § 75-2-313 comment P 3.

Patients who purchase prescription drugs from pharmacists do not negotiate or bargain with the pharmacists about the suitability of the product. Even assuming a pharmacist were to make a representation about the safety [**43] of a particular drug, the representation would not form "part of the basis of the bargain" as required by the Mississippi UCC because the patient purchases the drug on the basis of discussions with his or her physician. Unlike the buyer-seller relationship in normal sales transactions, the relationship between the patient and pharmacist is a function of a regulatory system requiring that certain drugs be sold solely by prescription of a physician. It is through the pharmacy that the patient purchases the drug, but in only this sense does the pharmacy function as a "seller." The only representations regarding the intrinsic properties of the drug that form the basis of the buyer's purchase are those of the physician. It is precisely for this reason that the learned intermediary doctrine focuses [*292] on communications between the manufacturer and physicians, rather than patients or pharmacies; it is the physicians who make the ultimate decision on whether to prescribe the drug.

Nor do plaintiffs state a claim for breach of implied warranty. The Mississippi UCC creates implied warranties of merchantability and fitness for goods sold by one who is a merchant with respect to goods of that kind. [**44] n72 Yet just as there is no basis for finding consumer reliance on pharmacists, so too there is no basis for adopting the view that a pharmacist is a retail

merchant like any other with respect to the sale of prescription drugs. A pharmacist's sales of prescription drugs are not attributable to his or her marketing the properties of the drugs. They are attributable to physicians' prescriptions. In this sense, a pharmacist provides "a service to the doctor and [acts] as an extension of the doctor in the same sense as a technician who takes an x-ray or analyzes a blood sample on a doctor's order." n73 In light of the special circumstances of pharmacy sales, "it is pure hyperbole to suggest . . . that the role of the pharmacist is similar to that of a clerk in an ordinary retail store." n74

n72 See MISS. CODE ANN. §§ 75-2-314, 75-2-315.

n73 Murphy, 710 P.2d at 251.

n74 Id. (citing RESTATEMENT (SECOND) TORTS, § 402A, comment k (1963-64 Main Vol.), which exempts "sellers" of prescription drugs from strict products liability in part based on the rationale that such "sellers" do not chose the product for the consumer).

[**45]

For these reasons, almost every state that has considered the issue has declined to find pharmacists liable for breach of either implied or express warranty with respect to properties of prescription drugs. n75 And these cases make sense from a public policy perspective: One of the purposes of imposing strict liability or liability for breach of warranty on retailers is to encourage retailers to pressure manufacturers to make safer products. Yet this goal is lost on pharmacists, who have little or no impact on a manufacturer's marketing of prescription drugs. There is therefore no reasonable basis for supposing that a cause of action exists against a pharmacist for breach of warranty under Mississippi law.

n75 See Coyle, 526 Pa. at 217, 584 A.2d at 1387 (refusing to find pharmacists strictly liable for dispensing defective drugs because "it is not the pharmacist on whom the public is forced to rely to obtain the products they need"); Presto v. Sandoz Pharmaceuticals Corp., 226 Ga. App. 547, 551, 487 S.E.2d 70, 75 (1998), cert. denied, Jan. 5,

133 F. Supp. 2d 272, *292; 2001 U.S. Dist. LEXIS 2008, **45;
CCH Prod. Liab. Rep. P16,028

1998 ("because the patient is legally deemed to rely on the physician and not the package label for [a] warning, [plaintiffs] cannot show they were 'relying on the seller's skill or judgment to select or furnish suitable goods,' as is required to prove an implied warranty of fitness); *Makripodis v. Merrell-Dow Pharmaceuticals, 361 Pa. Super. 589, 593-94, 523 A.2d 374, 376 (1987)* (druggist does not warrant that prescription drugs are fit for 'ordinary uses,' as use of drug is a decision made by physician); *Bichler v. Willing, 58 A.D.2d 331, 333, 397 N.Y.S.2d 57, 58-59 (1st Dept. 1977)* (warranties not implied in sale of prescription drugs, as patient places confidence in doctor's skill, not pharmacist's); *McLeod v. W.S. Merrell Co., 174 So. 2d 736, 739 (Fla. 1965)* (a transaction involving a prescription drug "is not one out of which a warranty, even by the most modern standards, would be implied"); *Batiste v. American Home Products, 32 N.C. App. 1, 11-12, 231 S.E.2d 269, 276, review denied, 292 N.C. 466, 233 S.E.2d 921 (1977)* (a pharmacy is not liable under the UCC and general warranty principles for injury arising out of a prescription drug).

[**46]

### 2. Alabama cases

Plaintiffs in *Gray* and *Gannon* allege failure to warn, and the *Gray* plaintiffs allege also breach of the implied warranties of fitness and merchantability against the non-diverse pharmacy. n76 While at least one Alabama court and [*293] three federal district courts applying Alabama law have ruled against plaintiff's position, n77 there is no definitive Alabama Supreme Court decision on the question of whether the learned intermediary doctrine shields pharmacists from liability for failure to warn. Nevertheless, given the law on pharmacist liability pronounced by state courts across the nation, n78 and in light of the unanimous conclusions of the Alabama decisions that have considered the issue, the Court finds no reasonable possibility that the Alabama Supreme Court would rule otherwise.

n76 *See Gray* Cpt PP 20, 23; *Gannon* Cpt P 5 (naming pharmacy as defendant). The *Gannon*

complaint makes no allegations specifically against the pharmacy defendant, but the only possible allegation relevant to the pharmacy defendant is the failure to warn.

n77 *See Sanks v. Parke-Davis, 2000 U.S. Dist. LEXIS 20739,* No. 00-S-1122-E (CSC) (M.D. Ala. Oct. 30, 2000); *Lansdell v. American Home Products Corp., 1999 U.S. Dist. LEXIS 22540,* No. CV-99-S-2110-NE (N.D. Ala. Oct 26, 1999); *Harrell v. Wyeth-Ayerst Labs,* No. 98-1194-BH-M (S.D. Ala. Feb. 1, 1999); *Orr v. Wyeth-Ayerst Labs Co.,* No. 98 CV 3000-DIET (Ala. Cir. Court, Mobile County) (Aug. 2, 1998).

[**47]

n78 *See supra* notes 55-59 and accompanying text.

Even if the Court were to assess Alabama law differently, plaintiffs' claims nevertheless would fail to state a cause of action for failure to warn. As indicated earlier, a failure to warn claim presupposes the defendant's knowledge of the danger. But these complaints do not allege that the pharmacies knew of the dangers. Indeed, the complaints allege that the manufacturer defendants concealed the risks. n79 Moreover, the *Gannon* complaint does not even make specific allegations against the pharmacy defendant; it simply names the pharmacy in the list of defendants, never to be mentioned again. Accordingly, plaintiffs have no cause of action against the pharmacy defendants for failure to warn.

n79 *See Gray* Cpt P13(d) ("The Pharmaceutical Defendants engaged in fraudulent and bad faith activities in promoting the drug Rezulin in every aspect of its development, approval and marketing"); P 13(3) ("The Pharmaceutical Defendants knew of the dangerous toxicity associated with Troglitazone [i.e. Rezulin] and intentionally modified and manipulated critical data to disguise Troglitazone's dangerous properties . . . "); PP 19(d)(5) and 19(d)(7) ("The Pharmaceutical Defendants were negligent in the design, labeling, marketing, sale, testing and/or distribution of Rezulin in that they . . . failed to

133 F. Supp. 2d 272, *293; 2001 U.S. Dist. LEXIS 2008, **47;
CCH Prod. Liab. Rep. P16,028

timely warn the medical community and/or Plaintiffs regarding the risks associated with Rezulin . . . [and] that the drug had not been adequately tested."). *See Gannon* Cpt P 50(h) ("[Defendants] recklessly, falsely and/or deceptively represented or knowingly omitted, suppressed or concealed facts of materiality regarding the safety and efficacy of Rezulin from prescribing physicians and the consuming public . . .").

[**48]

Neither plaintiffs nor defendants acknowledge that the *Gray* complaint makes a breach of warranty claim and therefore neither side has addressed its viability. Nevertheless, this Court finds that the claim is untenable under Alabama law. While the Alabama Supreme Court has not ruled definitively on the matter, one decision of that court makes its position clear. In *Stafford v. Nipp*, n80 the plaintiff sued her pharmacist for injuries she incurred as an alleged result of taking oral contraceptives for a period of nine years. The court reversed a grant of summary judgment in favor of the pharmacist because there was a factual issue as to whether the pharmacist had dispensed the contraceptives without a prescription from the plaintiff's physician. In so doing, it wrote that "the manufacturer's warnings accompanying the drug at the time of its purchase and sale by the pharmacy do not, as a matter of law, shield the pharmacist from liability based on breach of warranty where the pharmacist continues to fill a prescription without authorization from a doctor." n81 The holding strongly indicates that there is no cause of action under Alabama law against a pharmacy for breach of warranty [**49] in the sale of a prescription drug absent a showing that the pharmacist dispensed the drug without a valid prescription. As the *Gray* plaintiffs have made no such allegations, their claims against the pharmacy defendant will not lie.

n80 *502 So. 2d 702 (Ala. 1987).*
n81 *Id. at 705.*

[*294] *3. Texas, West Virginia, and Louisiana cases*

Plaintiffs in *Burnworth, Hernandez,* and *Mahon* also fail to state a sufficient claim against the non-diverse

pharmacists joined in those actions.

The *Burnworth* plaintiffs make claims of fraudulent misrepresentation and breach of express and implied warranties. Although the Louisiana Supreme Court has not ruled on whether a pharmacist may be liable on these theories for dispensing defective prescription drugs, Louisiana courts have held in the context of failure to warn claims that a pharmacist's duties are solely "to fill a prescription correctly and to warn the patient or to notify the prescribing physician of an excessive dosage [**50] or of obvious inadequacies on the face of the prescription which create a substantial risk of harm to the patient." n82 Given the limited scope of a pharmacist's duty under Louisiana law, it is unreasonable to suppose that a pharmacist, who is not required to provide any information to the patient other than whether a dosage is excessive or whether there are deficiencies on the face of the prescription, could be held liable for failing to tell patients of the harmful side-effects of Rezulin, whether that failure is couched in terms of failure to warn, breach of warranty or fraudulent misrepresentation. Accordingly, plaintiffs have no reasonable possibility of recovery against the pharmacists under Louisiana law.

n82 *Guillory v. Dr. X, 679 So. 2d 1004, 1010 (La. App. 3 Cir. 1996)* (citing *Hayes v. Travelers Ins. Co., 609 So. 2d 1084 (La. App. 2 Cir. 1992),* writ of appeal denied, *613 So. 2d 975 (La. 1993); Hendricks v. Charity Hosp. of New Orleans, 519 So. 2d 163 (La. App. 4 Cir. 1987)).* See also *Pilet v. Ciba-Geigy Corp., 1996 U.S. Dist. LEXIS 2344, No. 96 CV 021 (ML), 1996 WL 89262,* at *3 (E.D. La. Feb 28, 1996); Kinney v. Hutchinson, 449 So. 2d 696, 698 (La. App. 5 Cir. 1984).*

[**51]

The Texas plaintiff alleges that pharmacies should be held strictly liable "for manufacture and marketing, in interstate commerce, of a defective drug." n83 Pharmacies neither manufacture nor market prescription drugs. Moreover, as Texas law does not hold pharmacists liable for failure to warn of the risks of medications, n84 it would be unreasonable to suppose a different result with respect to strict products liability claims. Indeed, many of the cases upon which Texas law relies shield pharmacists from strict liability for injuries resulting from

133 F. Supp. 2d 272, *294; 2001 U.S. Dist. LEXIS 2008, **51;
CCH Prod. Liab. Rep. P16,028

dangerous or defective medications. n85

n83 *Hernandez* Cpt P VII.
n84 *See Morgan, 30 S.W.3d at 461-69.*
n85 *See id.* (citing *Ramirez v. Richardson Merrell, Inc., 628 F. Supp. 85, 86-87 (E.D. Pa. 1986); Batiste, 32 N.C. App. at 11, 231 S.E.2d at 275; Bichler, 58 A.D.2d at 333-35, 397 N.Y.S.2d at 58-60).*

Finally, the West Virginia plaintiffs allege claims of negligence, wilfulness, [**52] wantonness, and breach of express and implied warranty against the defendant pharmacy. The West Virginia Code expressly provides that "all persons, whether licensed pharmacists or not, shall be responsible for the quality of all drugs, chemicals and medicines they may sell or dispense, with the exception of those sold in or dispensed unchanged from the original retail package of the manufacturer, in which event the manufacturer shall be responsible." n86 Plaintiffs have no cause of action against the pharmacist defendant under West Virginia law, as they have not alleged that the Rezulin it dispensed was removed from its original packaging.

n86 *W. Va. Code § 30-5-12.*

C. Physicians

Defendants allege that the plaintiffs in *Gannon* fraudulently joined a physician, Jose Oblena. That Mr. Oblena is even a physician is impossible to determine from the face of the complaint, which simply lists him as a "resident of Calhoun County, Alabama, and over the age of nineteen (19) [*295] years." n87 In fact, it is impossible [**53] to determine anything about Oblena, because he is not mentioned in the complaint, other than in this introduction. He simply is included in all of the allegations against "defendants" in general.

n87 In this respect the Court relies on the

assertion in plaintiffs' original brief in support of their motion to remand that Oblena is a physician. Defendants do not refute the assertion.

Plaintiffs do not come close to alleging that Oblena proximately caused their injuries or that he knew or should have known of the risks of Rezulin. In fact, the assertion that "defendants . . . recklessly, falsely and/or deceptively represented or knowingly omitted, suppressed or concealed facts of such materiality regarding the safety and efficacy of Rezulin from prescribing physicians" refutes the assumption that Oblena, as a physician, had knowledge of Rezulin's harmful effects. In short, plaintiffs have failed to state any legally cognizable claim against Oblena, and this Court holds that he was joined improperly.

*II. Absence* [**54] *of Consent for Removal*

In seven cases, n88 plaintiffs allege that removal was improper, as not all defendants joined in or consented to it. The questions whether and to what extent consent is required for removal is one of federal law, to be answered with reference to Second Circuit precedent. n89

n88 The cases are *Hill v. Parke-Davis*, No. 00 Civ. 7634, *House v. Parke-Davis*, No. 00 Civ. 7628, *Hunter v. Parke-Davis*, No. 00 Civ. 7635, *H. Johnson v. Parke-Davis*, No. 00 Civ. 7631, *Southern v. Parke-Davis*, No. 00 Civ. 7636, *Teague v. Parke-Davis*, No. 00 Civ. 7630, and *Love v. Parke-Davis*, No. 00 Civ. 7629.
n89 *See supra* note 1 and accompanying text.

While the consent of all defendants ordinarily is required to effect removal, n90 "the failure of an improperly joined party to participate in the petition will not defeat removal." n91 Consent thus was not required from those defendants that Warner-Lambert has shown to have been joined improperly.

n90 *See Bradford v. Harding, 284 F.2d 307, 309 (2d Cir. 1960).*
[**55]

133 F. Supp. 2d 272, *295; 2001 U.S. Dist. LEXIS 2008, **55;
CCH Prod. Liab. Rep. P16,028

n91 *Avon Products, Inc. v. A/J Partnership, 1990 U.S. Dist. LEXIS 2186, No. 89 Civ. 3743 (PNL), 1990 WL 422416,* at *2 (S.D.N.Y. March 1, 1990) (quoting 14A WRIGHT, MILLER & COOPER, FEDERAL PRACTICE & PROCEDURE: JURISDICTION 2D § 3731 (1985)). *See also McKay v. Point Shipping Corp., 587 F. Supp. 41, 42 (S.D.N.Y. 1984)* (agreement of fraudulently joined party not necessary for removal) (citing *Broidy v. State Mutual Life Assurance Co., 186 F.2d 490, 492 (2d Cir. 1951)).*

In *Villarreal v. Medico, Inc.,* n92 Warner-Lambert's co-defendant, Medico, Inc., removed the action to federal court. Warner-Lambert, however, did not consent to the removal, and does not oppose plaintiffs' remand motion in that case.

n92 No. 00 Civ. 7672.

*III. Amount in Controversy*

Plaintiffs in four cases n93 seek remand on the ground that the requisite $ 75,000 amount in controversy is absent. Defendants assert that [**56] the matter in controversy in each case exceeds $ 75,000 and that removal was proper.

n93 The cases are *Armstrong v. Warner-Lambert Co.,* No. 00 Civ. 7632, *Hill v. Parke-Davis,* No. 00 Civ. 7634, *Hunter v. Parke-Davis,* No. 00 Civ. 7635, and *Southern v. Parke-Davis,* No. 00 Civ. 7636.

Defendants, as the party invoking federal jurisdiction, carry the burden of "proving to a reasonable probability that the claim is in excess of the statutory jurisdictional amount." n94 On the other hand, the focus of defendants' efforts need not be whether the plaintiff is likely to secure an amount greater than $ 75,000. [*296] Rather, the focus is on the claim, n95 and while "plaintiff is the master of its claim whose monetary demand is to be accorded deference," n96 a plaintiff's claim must be made

in good faith. n97

n94 *United Food and Commercial Workers Union v. Centermark Properties Meriden Sq. Inc., 30 F.3d 298, 305 (2d Cir. 1994)* (internal quotations omitted).

[**57]

n95 *See Zacharia v. Harbor Island Spa, Inc., 684 F.2d 199, 202 (2d Cir. 1982)* ("The jurisdictional determination is to be made on the basis of the plaintiff's allegations, not on a decision on the merits.").
n96 *United Food, 30 F.3d at 305* (internal quotations omitted).
n97 *See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288, 82 L. Ed. 845, 58 S. Ct. 586 (1938).*

To determine whether defendants' burden has been met, this Court looks not only to the complaint, but to any other evidence in the record. n98 Plaintiffs in *Armstrong* allege compensatory and punitive damages "in an amount in excess of the minimum jurisdictional limits of this court," n99 a reference to the Mississippi state court in which the action was filed. The complaint therefore does not preclude recovery in excess of $ 75,000. Moreover, the complaint contains allegations of "economic loss, including loss of earnings and diminution and/or loss of earning capacity," as well as "medical, health, incidental and related expenses," future expenses [**58] to be incurred from "reasonable and necessary health care, attention and services," and claim "serious and life-threatening medical conditions." n100 Other complaints in this MDL allege damages between $ 50 and $ 100 million n101 for similar injuries. In all the circumstances, the *Armstrong* complaint obviously asserts a claim exceeding $ 75,000.

n98 *United Food, 30 F.3d at 305.*
n99 *Armstrong* Cpt P 62.
n100 *Armstrong* Cpt P 32.
n101 *See* def. Mem. Ex. B (comparing injuries alleged in *Armstrong* to those alleged in *House, H. Johnson, Love* and *Teague*). The comparison

133 F. Supp. 2d 272, *296; 2001 U.S. Dist. LEXIS 2008, **58;
CCH Prod. Liab. Rep. P16,028

shows that the injuries alleged are substantially the same.

The defendants have met their burden with respect to *Hill, Hunter,* and *Southern,* all of which allege damages in the amount of $ 74,000. First, the complaints themselves indicate damage claims over the minimum jurisdictional amount. They are worded identically and aver, *inter alia,* that plaintiffs have incurred [**59] expenses for "numerous diagnostic procedures;" sustained injuries that "are permanent in nature and will require future medical care and treatment which will mean future expenditures;" have suffered "great mental, emotional and physical pain and suffering and mental anguish coupled with worry depression and anxiety and psychologocal problems which will continue in the future;" suffered "a loss of income and wage earning capacity which will continue in the future;" and suffer "a loss of vitality and capacity to enjoy life which is also permanent in nature." n102 These complaints, moreover, contain allegations of injury identical to those in *House, H. Johnson, Love* and *Teague,* all of which seek $ 50 million in compensatory damages and $ 100 million in punitive damages. n103 In fact, defendants point out, the original complaint in *Hill* sought these same damage amounts, and only later was amended to reduce alleged damages below the statutory minimum.

n102 *Hill, Hunter, Southern* Cpts P 13(G).
n103 Notably, these actions were all filed by the same counsel. *See De Aguilar v. Boeing Co.,* 11 F.3d 55, 58 (5th Cir. 1993) (defendants "easily met" their burden "by showing that many of the same plaintiffs in this action pled damages of up to $ 5,000,000 in other [fora] for the same injuries").

[**60]

Defendants have met their burden. Plaintiffs' damages claims in these four cases are not made in good faith, a conclusion confirmed by their refusal to agree to cap their recovery below $ 75,000. n104 Accordingly, the Court finds the allegations in *Armstrong, Hill, Hunter* and *Southern* [*297] meet the minimum statutory requirement for diversity jurisdiction.

n104 *See* Tr. Jan. 25, 2001 at 30.

*IV. Eleventh Amendment Basis for Remand*

Plaintiffs argue that the presence of the State of Mississippi Division of Medicaid as a plaintiff in *Armstrong* defeats removal on the theory that the State of Mississippi is a party in interest in the litigation and may not be hailed into federal court against its will by virtue of the Eleventh Amendment.

The Eleventh Amendment does not bar removal. It applies only to suits "commenced or prosecuted against" a state. Assuming *arguendo* that Mississippi is the real party in interest, the fact remains that this suit was brought by -- not against -- the state. And [**61] while the Eleventh Amendment in some areas has been extended beyond its textual limits, this is not the case with respect to state plaintiffs. Rather, the heavy weight of authority holds that the Eleventh Amendment does not bar removal. n105

n105 *See Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 31 L. Ed. 2d 712, 92 S. Ct. 1385 (1972) (where state is plaintiff in suit involving federal rights, "those suits may be brought in or removed to the [federal] courts without regard to the character of the parties.") (citing *Ames v. Kansas,* 111 U.S. 449, 470, 28 L. Ed. 482, 4 S. Ct. 437 (1884)); *Regents of the University of Minnesota v. Glaxo Wellcome, Inc.,* 58 F. Supp. 2d 1036, 1040 (finding majority of cases have found no bar to removal); *New York v. Citibank, N.A.,* 537 F. Supp. 1192, 1197 (S.D.N.Y. 1982) ("it is clear that an action can be removed notwithstanding the fact that a state is a plaintiff") (citing *Ames;* 1A J. MOORE & J. WICKER, MOORE'S FEDERAL PRACTICE § 0.160, at 192 (2d ed. 1981)). *Contra, California v. Steelcase, Inc.,* 792 F. Supp. 84 (C.D. Cal. 1992).

[**62]

*V. The* Teague *Case*

Plaintiffs in *Teague* filed a motion to remand in the Southern District of Mississippi, which was granted by

133 F. Supp. 2d 272, *297; 2001 U.S. Dist. LEXIS 2008, **62;
CCH Prod. Liab. Rep. P16,028

Judge Lee on October 10, 2000 and filed with the clerk on October 11. The Multidistrict Panel's order transferring *Teague* to this Court was entered by the Clerk of this Court on October 10, but not received by the Southern District of Mississippi until October 16. There is, in consequence, a question as to whether the order transferring *Teague* to this Court took effect, and thus deprived the Mississippi court of jurisdiction, before Judge Lee's order became effective.

According to *28 U.S.C. § 1407(c)(ii)*, a transfer order is effective when it is filed in the office of the clerk of the transferee court. n106 Accordingly, the transfer of *Teague* became effective on October 10, the date it was file-stamped as received, unless Judge Lee previously had remanded it to state court. n107

> n106 *See also In re Copper Antitrust Lit., 1999 U.S. Dist. LEXIS 20178,* No. 1303, C.A. No. 1:98-4067, 3:99-377 (JFN) (JPML Dec. 22, 1999) (vacating order issued by transferor court one day after transferee court clerk's office stamped the transfer order "rec'd/filed"); JPML Rule 1.5.
> [**63]

> n107 *See* def. Compend. of Auth. Ex. 31. (copy of docket sheet indicating date of filing of transfer order).

Plaintiffs argue that Judge Lee's order became effective on the day it was signed, October 10. They rely on *Weedon v. Gaden* n108 and *United States v. Hunt.* n109 But *Weedon* merely holds that the entry of judgment by the clerk is not an adjudication, and *Hunt* involved state rules of actual notice and did not concern the standard for when an order is effective.

> n108 *136 U.S. App. D.C. 1, 419 F.2d 303 (D.C. Cir. 1969).*
> n109 *513 F.2d 129 (10th Cir.1975).*

Defendants, for their part, point to *Rule 58 of the Federal Rules of Civil Procedure,* which states that a judgment is final only upon entry on the docket by the clerk of court n110 and argue that the Mississippi [*298] remand order therefore did not become effective before the transfer order. However, "judgment" is defined in Rule 54(b) [**64] as "a decree and any order from which an appeal lies." n111 As an order remanding to a state court based on lack of subject matter jurisdiction is unappealable, n112 Judge Lee's order was not a "judgment" and therefore was unaffected by Rule 58. Defendants point also to *In re American Precision Vibrator Co,* n113 where the Fifth Circuit held that the bankruptcy court had retained jurisdiction of the petition because an order dismissing the petition never had been docketed. n114 But the case is distinguishable because the dismissal order was appealable and therefore governed by Rule 58.

> n110 *See* FED. R. CIV. P. 58 ("a judgment is effective only when . . . entered as provided in Rule 79(a)"). *FED. R. CIV. P. 79(a)* in turn requires the clerk to docket judgments.
> n111 *See* FED. R. CIV. P. 54(b).
> n112 *See 28 U.S.C. § 1447(d).* Although the Supreme Court has limited Section 1447(d) to remand orders based on a timely raised defect in removal procedure or lack of subject matter jurisdiction, *see Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 133 L. Ed. 2d 461, 116 S. Ct. 494 (1995),* Judge Lee remanded *Teague* based on lack of subject matter jurisdiction. His order therefore was unappealable.
> [**65]

> n113 *863 F.2d 428 (5th Cir. 1989).*
> n114 *Id.* at 429.

As the foregoing makes clear, there is no controlling or, for that matter, persuasive authority on either side of the argument. When a party seeking remand challenges the jurisdictional predicate for removal, "the burden falls squarely upon the removing party to establish its right to a federal forum by 'competent proof.'" n115 Because the defendants have failed to meet that burden here, this Court is bound to resolve the issue in favor of the plaintiffs.

133 F. Supp. 2d 272, *298; 2001 U.S. Dist. LEXIS 2008, **65;
CCH Prod. Liab. Rep. P16,028

n115 *R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979)* (citing *McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189, 80 L. Ed. 1135, 56 S. Ct. 780 (1936).*

*VII. Conclusion*

The motions to remand in *Hill,* No. 00 Civ. 7634, *Hunter,* No. 00 Civ. 7635, *Southern,* No. 00 Civ. 7636, *Armstrong,* [**66] No. 00 Civ. 7632, *H. Johnson,* No. 00 Civ. 7631, *House,* No. 00 Civ. 7628, *Gray,* No. 00 Civ. 8501, *Gannon,* No. 00 Civ. 6069, *Love,* No. 00 Civ. 7629, *Burnworth,* No. 01 Civ. 0049, *Mahon,* No. 00 Civ. 9039, *Hernandez,* No. 00 Civ. 9033, *Frost,* No. 00 Civ. 9131, and *Williams,* No. 00 Civ. 7627, are denied. The motion to remand in *Villarreal,* No. 00 Civ. 7072, is granted. The Court does not consider the motion in *Teague,* No. 00 Civ. 7630, for lack of jurisdiction; accordingly, the remand order issued by Judge Lee stands. The Clerk will close that case. Defendants' motions in *Hill*, No. 00 Civ. 7634, *Hunter,* No. 00 Civ. 7635, *Southern,* No. 00 Civ. 7636, *House,* No. 00 Civ. 7628, and *H. Johnson,* No. 00 Civ. 7631, to strike the affidavit of Calvin Ramsey are denied.

SO ORDERED.

Dated: March 1, 2001

Lewis A. Kaplan

United States District Judge